No. 01-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 8

WILLIAM RUSSELL,

      Plaintiff and Appellant,

    v.

FLATHEAD COUNTY, and THE FLATHEAD
COUNTY BOARD OF ADJUSTMENT,

      Defendants and Respondents.

FILED

JAN 2 3 2003

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and for the County of Flathead,
                  Honorable Katherine R. Curtis, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

            Richard DeJana, Richard DeJana & Associates, PLLC, Kalispell, Montana

      For Respondents:

            Thomas Esch, County Attorney; Jonathan B. Smith, Deputy County
            Attorney, Kalispell, Montana

                        Submitted on Briefs:   September 20, 2001

                                  Decided:   January 23, 2003

Filed:

_____
                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant William Russell (Russell) appeals from the orders of the Eleventh Judicial District Court, Flathead County, in favor of Respondent Flathead County, enjoining Russell's use of his property as violative of the County's zoning regulations. We affirm.

¶2    The following issues are presented on appeal:

¶3    1. Did the District Court err in concluding that Russell's challenge to the zoning district pursuant to § 76-2-202, MCA, was barred by the statute of limitations?

¶4    2. Did the District Court err in determining that Russell's property was included within the boundaries of the zoning district when the district was created?

¶5    3. Did the District Court err in concluding that Russell's use of the property was an impermissible nonconforming use?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6    The Highway 93 North Zoning District (District) was created on May 7, 1991, by the Flathead County Board of Commissioners. The resolution establishing the District established several subdistricts, each with its own regulations regarding uses and types of buildings within the subdistrict.

¶7    On March 1, 1997, Russell purchased a 4.9 acre parcel from William Hedstrom (Hedstrom), which is the property subject to this dispute. Russell's property lies within the District. At the time of the creation of the District, Russell's property, then owned by

2

Hedstrom, was classified as SAG-1 (Suburban Agricultural).[1] A revision of the Flathead County Zoning Regulations in September 1993 changed the designation from SAG-1 to SAG-10, but continued the suburban agricultural classification.

¶8 For years prior to the adoption of the District, Hedstrom operated a dairy farm on the property, and at the time the District was created, was using approximately two-thirds of the property to support his dairy operation, which included fifty to one hundred head of cattle. The shop on the property was built in 1973. When the District was created in 1991, Hedstrom was using the shop to repair farm equipment, both his and that owned by others, and to build trailers and hitches. Hedstrom testified that he did all the shop work himself, spending approximately thirty-five hours a week in the shop. Hedstrom's use of the property did not include the general storage of heavy equipment. He testified that from one to three pieces of farm equipment were occasionally stored on the property, but that this equipment was "well-screened" from public view by the knoll on the highway side of the property, and by the dairy buildings, grain bins, and equipment shed located on the property.

¶9 Prior to purchasing the property, Russell was aware that Hedstrom operated a dairy and that the property was classified as agricultural. Russell did not, however, solicit information from the planning office regarding permissible uses of the property prior to his

---

[1] A "Suburban Agricultural SAG-1" classification is defined as a "district to protect and preserve agricultural lands for the performance of limited agricultural functions and to provide a buffer between urban and unlimited agricultural uses, encouraging concentration of such uses in areas where potential friction of uses will be minimized." Section 3.02C, Chapter 3, Flathead County Comprehensive Zoning Regulations (1991).

purchase. Since his purchase, Russell has operated a business involving the repair, maintenance, and storage of heavy equipment on the property. Russell employs one person to work at the shop full-time and has stored twenty to thirty pieces of heavy equipment, in various stages of repair, on the property, including logging trucks, semi-trucks, busses, and bulldozers. Russell admitted in his testimony that the extent of his use varies from Hedstrom's use, because no agricultural use of the property has occurred since Russell purchased the property.

¶10 The testimony of several neighbors established that the use of the property prior to the purchase by Russell was generally observable as agricultural. Following Russell's purchase of the property, the general observable use of the property has been industrial. The equipment repair conducted by Hedstrom prior to Russell's purchase was conducted inside the shop, out of the view of adjoining property owners. Russell's current use is highly visible and occasionally audible to the adjoining neighbors. Russell's use of the property involves substantially more equipment than the one to three pieces that Hedstrom had on the property and involves equipment not traditionally considered farm equipment. It also involves the storage of equipment on the property in a manner that is not screened from public view.

¶11 In the fall of 1997, the county zoning administrator received complaints regarding Russell's use of the property. On December 31, 1997, the zoning administrator issued a determination that Russell's use was nonconforming under the zoning regulations. Russell

4

appealed this decision to the Flathead County Board of Adjustment. The Board of Adjustment upheld the decision of the zoning administrator.

¶12 On May 6, 1998, Russell appealed the Board of Adjustment's decision to the District Court. His Complaint alleged that the adoption of zoning regulations was illegal (Count 1), that Plaintiff's use of the property was the same as the use before adoption of the District (Count 2), and that Plaintiff's property was excluded from the actual boundaries of the zoning district (Count 3). Flathead County filed an Answer and Counterclaim claiming Russell's use of the property was not a permitted use or a continuation of a nonconforming use, and a motion for summary judgment on Count 1 of Russell's Complaint, contending that Russell's challenge to the zoning ordinance thereunder was barred by the statute of limitations set forth in § 76-2-202(1)(b), MCA. Russell responded by filing an Amended Complaint and also moving for summary judgment as to Count 1. By Memorandum and Order entered on October 19, 1998, the District Court granted the County's motion for summary judgment and denied Russell's motion for summary judgment as to Count 1.

¶13 The remaining issues were tried in a bench trial before the Honorable Katherine R. Curtis, and on November 14, 2000, the District Court entered its Findings of Fact, Conclusions of Law and an Order in favor of Flathead County, enjoining Russell from using the property other than as allowed by SAG-10 zoning regulations, except as the property was used prior to the creation of the District. Russell appeals the judgment entered by the District Court.

5

## DISCUSSION

¶14　**Did the District Court err in concluding that Russell's challenge to the District was barred by the statute of limitations?**

¶15　Russell claimed in his Count 1 that the subdistricts created within the District, and the differing regulations for property located within each subdistrict, violated § 76-2-202, MCA, which requires that zoning regulations for each class or kind of buildings "throughout a district" be uniform. The District Court entered summary judgment in favor of Flathead County on the grounds that this claim was barred by the statute of limitations.

¶16　We review a district court's order granting summary judgment *de novo*, applying the same evaluation as the district court does pursuant to Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred. [Citations omitted.]

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903.

¶17　At the heart of the issue here is the time limitation provision set forth in § 76-2-202, MCA, which provides that actions challenging the creation of a zoning district must be

6

commenced "within 5 years after the date of the order by the board of county commissioners creating the district. . . ." Section 76-2-202(1)(b), MCA (1989).[2]

¶18    The District was created by resolution of the Board of County Commissioners on May 7, 1991, and Russell filed his Complaint on May 6, 1998. Flathead County maintains that Russell's action is a challenge to the creation of the District, with its subdistricts, and therefore, is barred by the five-year limitation provision within § 76-2-202(1)(b), MCA.

¶19    Russell argues that because he is seeking to invalidate differing regulations within the District, and not the creation of the District, the five-year limitation provision is inapplicable. In support of his position, Russell offers that the zoning statutes generally distinguish between the creation of a district and the establishment of the regulations thereunder, and that the five-year limitation provision applies only to actions challenging the actual creation of a district. He reasons that applying the five-year limitation period here would bar all challenges to illegal regulations if a zoning district had been in existence for more than five years. Alternatively, Russell argues that if the five-year provision does apply, then the limitation period began to run on September 27, 1993, when the county commissioners enacted a resolution amending the zoning regulations, and changing the zone designation from SAG-1 to SAG-10, and therefore, his action was timely filed on May 6, 1998.

---

[2]Neither party, nor the District Court in its decision, referred to the version of the MCA upon which they were relying. However, the 1989 version of the Code, which was in effect at the time the District was created, contains the 5 year limitation provision at issue here, and is relied upon herein. A virtually identical provision remains in effect under the 2001 Code.

¶20    The District Court analyzed Russell's claim and determined as a matter of law that it was a challenge to the creation of the District, stating as follows:

> The basis of Plaintiff's argument that the regulations are invalid is that the multiple districts were created incorrectly and are actually one district. As counsel for Plaintiff stated at oral argument: "Here we have a district with illegally created subdistricts." There could not be a [clearer] challenge to "the creation of a zoning district," which must be commenced within five years after the creation. Plaintiff's claim is barred by the statute of limitations set forth in Section 76-2-202(1)(b), M.C.A.

¶21    We agree with the District Court's conclusion. Russell's assertion notwithstanding, he is arguing that the creation of the District with distinctive subdistricts does not comply with § 76-2-202, MCA. The crux of Russell's argument is that the District is invalid because the County enacted different property classifications and regulations for properties within the subdistricts of a single district. This differing treatment of property within the subdistricts did not occur when the zoning regulations were amended in September 1993, but, rather, when the District was created in May 1991. Thus, Russell's true challenge is to the creation of this zoning district, and the five-year limitation provision contained in § 76-2-202(1)(b), MCA, applies. Because his Complaint was filed more than five years after the creation of the District, his claim is time barred.

¶22    Neither are we persuaded by Russell's argument that this conclusion bars all challenges to zoning regulations after a district has been in existence for five years. We are not faced here with the question of whether the five-year limitation provision in § 76-2-202(1)(b), MCA, applies to challenges to zoning regulations which are unrelated to a

8

district's creation, and therefore, this decision has no bearing on that issue. Nonetheless, this decision should not be interpreted as imposing a blanket prohibition on challenges to zoning regulations after a district has been in existence for five years.

¶23 We conclude that the District Court did not err in granting summary judgment to Flathead County on Count 1.

**¶24 Did the District Court err in determining that Russell's property was included within the District when it was created?**

¶25 The perimeter description of the District includes the property owned by Russell, as does the description of the property within the perimeter classified as SAG-1. These facts are not disputed. Russell acknowledges in his brief that "[t]he Plaintiff's property is within the first SAG-1 area described."

¶26 However, Russell argues that the area described as SAG-1 is itself excluded from the District. He asserts that the description clearly excluded certain areas within the District's outer boundary, such as the Prairie View Zoning District and the proposed Schroeder Ridge Zoning District, and that the same kind of exclusion language was used to exclude the area described as SAG-1, which includes his property. Thus, Russell asks that this Court declare his property, and all other property within the SAG-1 classification, to be outside the District, and unaffected by regulations adopted pursuant to the District's creation.

9

¶27 In drafting the District's perimeter description, the drafters first classified the entire area within the District as AG-40 (agricultural)[3], and then excluded from the AG-40 classification those properties which were previously zoned or which were zoned with a different classification. Russell asserts that by placing the word "excluding" immediately preceding the land descriptions not classified as AG-40, these properties were removed from the District.

¶28 The property description in the resolution approving the District is set forth in the following manner:

> PERIMETER DESCRIPTION OF HIGHWAY 93 NORTH ZONING DISTRICT to be zoned AG-40
>
> [boundary description of entire District]
>
> Excluding the Prairie View Zoning District described as follows: [property description]
>
> And excluding the proposed Schroeder Ridge Zoning District described as follows: [property description]
>
> SAG-1
>
> Excluding a tract of land to be zoned SAG-1 described as follows: [property description]
>
> R-2

---

[3] An "Agricultural AG-40" classification is defined as a "district to protect and preserve agricultural land for the performance of a wide range of agricultural functions. It is intended to control the scattered intrusion of uses not compatible with an agricultural environment, including but not limited to residential development." Section 3.02, Chapter 3, Flathead County Comprehensive Zoning Regulations (1991).

Excluding a tract of land to be zoned R-2 described as follows: [property description]

B-1

Excluding a tract of land to be zoned B-1 described as follows: [property description]

R-1

Excluding a tract of land to be zoned R-1 described as follows: [property description]

Resolution No. 837, adopted March 5, 1991.

¶29    To repeat, it is undisputed that Russell's property is located within the perimeter property description of the District and within the property described and classified as SAG-1. However, referencing the word "excluding" which precedes the description of the area classified as SAG-1, Russell claims that his property, and all SAG-1 property, was excluded from the District entirely.

¶30    The County offers that the language used in describing the properties that were to be classified other than AG-40 could have been clearer, but that it was sufficient to serve the purpose for which it was intended--to notify the public and landowners of the zoning which was proposed for their property. Furthermore, the County argues that the use of the word "excluding" to describe property not classified as AG-40 did not exclude the property from the District, but simply excluded the property from the AG-40 classification so that such property could be separated into subdistricts and classified differently.

11

¶31 Russell's argument is without merit. A plain reading of Resolution 837 demonstrates that the word "excluding" which precedes the property designated as SAG-1 was used to exclude the described property from the AG-40 classification for the single purpose of classifying the property as SAG-1. The description states "Excluding a tract of land *to be zoned* SAG-1." The intention to zone the property as SAG-1 was clearly expressed by this language in the property description. Further, it was also expressed in the body of the Resolution:

> NOW, THEREFORE, BE IT RESOLVED, that the Board of Commissioners of Flathead County, Montana . . . hereby adopts this resolution of intention to create the Highway 93 North Zoning District. The proposal would result in zoning portions of the area set forth [herein] as AG-40, SAG-1, R-1, R-2, B-1.
> . . .

¶32 There can be no confusion about the effect of the Resolution. Further, if Russell's interpretation was adopted, then the Resolution's use of the word "excluding," which was also used to define those areas within the AG-40 perimeter description which were zoned as R-1, R-2 and B-1, would likewise exclude these other areas from the District. We conclude the District Court did not err in determining that Russell's property was properly included within the District when it was created.

¶33 **Did the District Court err in concluding that Russell's use of the property was an impermissible nonconforming use?**

¶34 The District Court found that Russell's use of the property varied substantially from the use at the time the District was created, and therefore, exceeded allowances made in state

12

and county codes for continuation of existing, nonconforming uses. In affirming the decision of the Board of Adjustment, the District Court imposed conditions which restricted the kind of equipment which could be repaired in Russell's facility and the number of hours of operation, and also required equipment stored outside of the shop to be screened from public view.

¶35 Russell challenges the District Court's conclusion that his use of the property was not an existing use. He asserts that the District Court may have found that his particular manner of use was objectionable, but that, nonetheless, his use was essentially the same as it was prior to zoning: the repair of equipment. He argues, relying on this Court's holding in *Kensmoe v. City of Missoula* (1971), 156 Mont. 401, 480 P.2d 835, that the standard for determining the validity of an existing, nonconforming use under both state statute and city ordinance should be flexible, and that the District Court's consideration was too narrow. He contends that the imposition of restrictions upon his use of the property--restrictions which are not found within the zoning regulations--constitutes judicial legislating, and that the restrictions must be struck.

¶36 The District Court relied upon § 76-2-208, MCA, which states:

> **Continuation of nonconforming uses**. Any lawful use which is made of land or buildings at the time any zoning resolution is adopted by the board of county commissioners may be continued although such use does not conform to the provisions of such resolution.

13

¶37 The District Court also applied a county zoning regulation addressing the continuation of nonconforming uses of property. Section 2.07.010, Flathead County Zoning Regulations, states:

> A lot or building being used in an otherwise lawful manner that does not conform to the use provisions of the Flathead County Zoning Regulations, may continue to be used in the manner and to the extent that it was being used at the time of the adoption of the zoning.

The District Court found Russell's use to be in violation of both of these provisions.

¶38 In order to resolve this issue, we must examine Hedstrom's use of the property at the time of zoning. The District Court found, and Russell does not challenge on appeal, that Russell admitted in his testimony that the extent of his use varies significantly from Hedstrom's use of the property.

¶39 At the time the property was zoned in May 1991, Hedstrom operated a dairy farm on the property. Incidental to the dairy operation on the property, Hedstrom also used the shop located on the property to repair farm equipment. Hedstrom used the shop to repair both his own farm equipment and that of others. Hedstrom also built trailers and hitches in the shop. Hedstrom testified that at the time of zoning he would spend approximately thirty-five hours a week in the shop, and that he did all the shop work himself. At the time of zoning, Hedstrom stated he would store one to three pieces of farm equipment on the property from time-to-time.

¶40 Since purchasing the property in March 1997, Russell has operated an equipment repair business on the property. Russell has used the property to repair, maintain, and store

14

heavy equipment. Russell employs one person to work full-time in the shop. Russell also stores twenty to thirty pieces of equipment, in various stages of repair, on the property. The stored equipment includes logging trucks, semi-trucks, busses, and bulldozers. No agricultural use has occurred on the property since Russell purchased the property.

¶41 The District Court concluded that Russell's use was "substantially different" than the pre-existing, nonconforming use of the property, and therefore violated both Section 2.07.010, Flathead County Zoning Regulations, and § 76-2-208, MCA. We find that the District Court did not err in so concluding. The District Court's holding was supported by substantial evidence that Russell was not using the property "in the manner and to the extent that it was being used at the time of the adoption of the zoning," as required by the ordinance.

¶42 Further, the District Court's holding is consistent with § 76-2-208, MCA, which provides that "[a]ny lawful use . . . may be continued." In his brief, Russell argues that the plain meaning of this statutory language "does not imply a limitation on expansion" of a pre-existing lawful use of the property, and therefore, his activities on the property must be permitted. However, we find that the language contemplates continuation of the status quo. The word "continued," defined as "lasting or extending without interruption,"[4] means simply that a pre-existing use may be maintained. The evidence here establishes that Russell has done more than maintain the existing use. He has expanded the kind, or the nature, of the property's use to include activities which did not exist at the time of zoning (from farm

---

[4]Merriam-Webster Collegiate Dictionary, Tenth Edition, 1998.

15

equipment repair to heavy commercial equipment repair), and substantially increased the quantity, or the volume, of the new activity beyond that associated with the previous use of the property (from one to three vehicles to twenty to thirty vehicles at a time).

¶43     In *Kensmoe*, an uninhabitable trailer home on the subject property, a nonconforming use, was replaced with a newer trailer home. The City of Missoula brought an action to prohibit this perpetuation of the nonconforming use. This Court held in favor of the plaintiff property owner, recognizing, based upon the City's ordinance, that "plaintiff has an existing vested right to a nonconforming, continuous, and unchanging use of the land in question as a site for maintaining one single family residential trailer." *Kensmoe*, 156 Mont. at 406, 480 P.2d at 838. We concluded that the non-conforming trailer home could be properly replaced in accordance with this vested right. Section 76-2-208, MCA, was not applied.

¶44     Contrary to Russell's argument, this Court's preclusion of the City's effort to restrict the property owner in *Kensmoe* offers no support for Russell's argument here. The property owner in *Kensmoe* sought to continue the precise pre-existing, nonconforming use, but with a newer trailer home. She did not seek to expand or change the purposes for which her property was used, nor the volume of such use. Unlike the property owner in *Kensmoe*, Russell has engaged in activities which substantially deviate from the pre-existing uses of the property.

¶45     Finally, Russell argues zoning is a legislative function, and that by imposing the time and use restrictions on the property, the District Court has exceeded its power and is

16

legislating. Russell contends that the court's distinction between farm equipment and heavy equipment arises not from the regulations, but from the court's own descriptions. He argues that nothing in the AG-40 or SAG-1 zoning regulations prohibits storage of heavy equipment on the property, restricts uses to certain times of the day, or imposes a screening requirement, and therefore, these conditions were impermissibly imposed.

¶46 We disagree. Russell's use of the property exceeds the pre-existing nonconforming use of the property in both manner and extent of use. From the evidence presented, the District Court determined the use of the property at the time of zoning, and limited Russell's use with respect to the type of equipment repaired, the number of pieces of equipment stored on the property, and number of hours operated per week to the manner and extent of that prior use. Consistent with the historical storage of vehicles out of public view on the property, the District Court imposed a screening requirement to shield vehicles from public view. In imposing these conditions, the District Court was not legislating limitations on the property. Rather, the court was enforcing the ordinance's requirement that nonconforming uses be continued in the same manner as "at the time of the adoption of the zoning." Section 2.07.010, Flathead County Zoning Regulations. We find no error.

¶47 The order of the District Court is affirmed.

_____
Justice

We concur:

/s/ Patricia Cotter

/s/ Jim Rice

/s/ W. William Leaphart

/s/ Jim Regnier
Justices

18